1170 In Re Ronald Katz Technology. Mr. Mead. Good afternoon, your honors, and may it please the court. This case presents a straightforward issue of meansful function claim construction. Mr. Mead, can I ask a question up front about the 551 patent, which is the case, the patent in front of us, correct? That's correct, your honor. Okay, in looking at your statement of related cases, I realize that some of these cases are totally concluded. I'm trying to find out if there is a case alive today in which the 551 is being asserted. There is one case alive today in which the patent is being asserted. That's the case cited in the third bullet point here on page one of the blue brief. Is that the Eastern District of Texas case? That's the correct case. The case has actually been transferred now following remand from the multi-district litigation panel. It was scheduled for trial in 2016. And I'm looking at the scheduling order that was actually proposed by your client. And it says that you're only asserting two claims in the 547 patent. And I traced back, and according to what I can find in the file, there was, in the California proceeding in the multi-district litigation, the 551 dropped out. The 551 patent is still asserted in that litigation. Upon the entry of the board's decision, as it stands now, which is on appeal now, finding the claims invalid, the claim is not currently asserted in the litigation because we don't dispute that if the board's decision stands, this collateral estoppel applies effectively bond or tongue collateral estoppel, and the claim would no longer be asserted. However, the claim is here on appeal, hasn't been withdrawn from the FedEx lawsuit. The patent is still asserted. The claim is in the case. It's not currently asserted because of the board decision that currently stands and binds, but subject to this appeal. I'm looking now at a document that was filed by FedEx in the proceedings that noted that over in California what happened was all the claims were eliminated except for the other case. And then there is an argument here that the 551 could be reasserted, right, if we were to reverse in this case. It's essentially reasserted or whatever the correct legal terminology might be. It's not currently asserted because of the currently, you know, the board decision is the current one. But you said because of the board decision is the reason why the trial order conflicts only trying the number of the other patent. You probably know. It's 6292547 is the other patent. Yeah, the claims 11 and 18 and 547. Correct. I believe it may just be claim 18, but that's the patent. And so this patent is not out of that case, has not been withdrawn from that case. When I say this patent, I mean the 551 patent, 5815551, currently subject to this appeal. As I say, it looks as if the 551 came out of the case when the case was in California, before the case ever gets transferred back to Texas and then over to Tennessee. Well, so the document you're reading from is obviously not part of the record here. I don't have that in front of me. If that's a representation made by FedEx, it's incorrect to the extent that it would suggest that patent has been in any way withdrawn or that the claim will never be asserted. Currently, there's a board decision and the patent owner respects it. I mean, I'll be perfectly honest with you. In a FedEx filing, FedEx says most recently claimed 19 of the 551, 19 depends from 18, was invalidated by the PTO. That decision is currently on the field of the Federal Circuit. It's not a factor in this case unless the Federal Circuit reverses the PTO cancellation. That's what you're saying. What you just read sounds consistent with our position, unless and until of this appeal, right? So, but in the event, if this appeal were to resolve in your favor, then you would need to amend the scheduling order if you're going to bring the 551 back into the trial, correct? Perhaps amend in some regard, and the trial date is not actually until May of 2016, which was at FedEx, which was an accommodation actually to FedEx and its counsel. The patent owner had requested an earlier trial date because the case has been pending actually about 10 years now. So, you know, I can't say exactly what the effect would be depending on the decision of any, or the timing of any decision from this court and what still needs to be done before trial in that case. So presumably some type of amendment, although I do know the trial is not until May of next year. I was concerned because it would have been a little bit helpful to us if you might have been able to update your statement of related cases so we could have followed the case over to Tennessee. I apologize for that, Your Honor. So turning to the... Should that time come off the clock? Well, we'll pretend that if we need it. Thank you. No problem, Your Honors. As you can see where I was going, the case would be moved unless if... The only case in which Mr. Katz has that 551 going is in the case that's done in Tennessee now. Correct. And because the patent has expired in six years, if it weren't for that Tennessee case, this appeal would be moved. Correct as far as, you know, pending lawsuits moved in the sense of... There's no future lawsuit to be filed. Correct in that regard, absolutely, Your Honor. But for the footnote, that the fact that the 551 is potentially revivable for trial in the Tennessee case, we'd dismiss this case for mootness. Makes sense. He'd be moving to have the case dismissed as an officer in the court. He'd be moving to have the case dismissed, I believe. That absolutely makes sense, Your Honor. And that's why we have... And I apologize for not updating the case caption there. Okay. On to proceed with the merits. So the issue here is a means-plus-function claim construction issue. The function is undisputed. It's never been disputed, to control processing formats of the analysis structure in accordance with Venus. In the proceedings below, in a multi-year re-examination proceeding, the examiner correctly construed the corresponding structure. The examiner did a means-plus-function analysis, looked at the specification, concluded the associated structure is, quote, from the specification. This is at JA-2277. Corresponding structure that the examiner determined... When you say the function, the function is agreed by everybody? That's right, Your Honor. Well, what... If you look at Claim 18, Claim 18 is adding something to Claim 14, right? Correct. 14 is the analogy, Your Honor. And so for us to identify exactly what the function is, we say, well, what is added? What is the means limitation is what's adding? Something to narrow Claim 14, right? Correct. And isn't it DNIS? And DNIS is simply the ability to identify a phone number and then to understand what it is that phone number is trying to do. And, for example, if there's a number 1-800-999-9999 is the number you dial if you want to get an American Airlines reservation, then what this means is that when I dial, you know, that number, it identifies the number, and then it knows that that wants to go to American Airlines reservation. So I'm very glad you, Your Honor, asked that question. Part of the function relates to DNIS. That's why it's critical, as the Court has repeatedly cautioned, we have to look at precisely what the recited function is. Here, recited function is to control processing formats of the analysis structure in accordance with the DNIS signal that Your Honor just described. It's not merely to identify a format based on a DNIS signal. It's not merely to select a format based on a DNIS signal. It's a more encompassing term to control processing formats of the analysis structure. And it's set forth in the papers. There's analysis structure, there are processing structures that implement formats which are essentially interactive call processing. What does it mean to control DNIS? It's to control the formats. And I don't believe there's been any dispute, obviously. First, the language. Control the formats of. Right? Control the processing formats of the analysis structure. The analysis structure is in the last clause in Claim 14, isn't it? Correct. So what you're doing is that all that is is just an analysis structure. So what 18 is doing is narrowing the analysis structure to whatever they're talking about here, which is DNIS. Right? And so the signal provided by the communication facility is just a telephone call number. And all that is is indicative of one of many numbers. So it's what it's doing is it's giving some control to that number. And isn't that control only saying, well, when you dial that number, that you're trying to get American Airlines. Preservation service. As I tried to just articulate it, the function is not simply that. It's certainly the identification of the format based on DNIS may be encompassed within the recited function. But it's something broader. It's controlling the format, controlling the operation in accordance with DNIS. It's not simply. DNIS, for example, has got nothing to do with voice interface, does it? DNIS doesn't have anything to do with voice recognition or anything having to do with voice over the call. Not per se. That's correct insofar as it goes. The interface structure, which is what controls the processing formats and is the means here, happens to include various functionalities, including a voice generator structure. So it's, in that sense, has something to do with it in terms of being in the same unitary structure. Right. Well, I was trying to get... The reason why I stopped you on what the function is is it seems to me you've got real claim construction issues that say exactly what is 18 doing. And 18 clearly is doing DNIS, right, tying it to that. DNIS is clearly involved. It's expressly involved. Which is not involved in the final limitation in Claim 14 is broad. It could be anything. Correct. It's narrowing it all to DNIS. DNIS has got nothing to do with voice recognition. With voice recognition. Voice recognition itself is not how DNIS is used in the patent. No. All DNIS is just saying, I know what the number was. So DNIS... And the fact that the number I gave went to American Airlines Reservation is something that... Because that's what the control function is, is to know that number goes there. Isn't it? So the control function, which, as we explain in the papers, is the Interface 20 device including the Call Data Analyzer. The Call Data Analyzer, there's no description whatsoever in the specification of what it does other than its name indicating Call Data Analyzer. Just as the name indicates, it only analyzes. So there's an incoming data stream of call data which includes various information which needs to be analyzed and interpreted. The Call Data Analyzer analyzes that information, makes available the DNIS, the dialed number digits, to the Interface 20, which it's a part of. And then the specification repeatedly describes, in the passages we could look at and cite it in our brief as well, it's the Interface 20. That's the description of the unitary device that is... Well, but doesn't the spec line at column 4 and down line 63 or 64 say that control for this ANI-DNIS capacity is provided through the Call Data Analyzer? The specification says that, and there are two reasons. That passage does not sufficiently link the Call Data Analyzer by itself to perform the function as recited in the claim. First is... Well, where does it say that the Interface provides the control for this DNIS capacity? So, to finish the answer to your previous question first, the Call Data Analyzer, there's no description in that cited passage, which is the only thing the Patent Office relies on, of controlling formats of the analysis structure. So that passage does not link the Call Data Analyzer by itself. And to answer Your Honor's question about where... No, it doesn't link to the Call Data Analyzer. I mean, what I'm talking... Maybe I'm simple-minded, but the way I understood the way 112.16 goes is that once you identify the function that is associated with the means, means for doing a function, right? Then you go looking for what is the clear indication of the spec that what we're talking about is a structure that performs the function, right? So I have DNIS mentioned in the means limitation, and what we're trying to do is to control DNIS, is what I read the claim to say, and what I believe the PTO, the board read the claim to say. So I'm now looking in the spec to say, is there anything in there where the patentee said that to control DNIS, you'd use X structure? And the point... What I pointed to you said they'd look to 20A. We know that 20A is a subset of 20. It's like, you know, like a box. And maybe voice recognition takes place someplace else in 20, but not in 20A, because we know voice recognition doesn't work in 20A. So there's no description whatsoever in the specification of the call data analyzer by itself controlling processing formats of the analysis structure. That's the recited function here. That's the yardstick that must be used to determine it. The call data analyzer absolutely is part of... Where is the description? Where is the clear description in the spec that says, well, if it isn't 20A, it's 20. And section 20 is the structure for all the functions. I'll give you several citations. Column 18, lines 61 through 65. 18? Mm-hmm. Line how much? Lines 61 through 65. 61 through 65. And what does all that say? What that says, among other passages we can look at, is by DNIS, you have... Basically, it's describing an embodiment. We have different... We're talking about DNIS and starting at line 51. No, 61. 61. So line 61, each of the several telephone stations, or television stations, would solicit calls for different numbers as a result, either by DNIS or call channeling, select processors, i.e. My commentary is that the processors are what implement the formats, as described elsewhere and as we've presented in the papers, and I think there's no dispute on that. Those processors implement formats. Different ones are reached by DNIS. And then, returning to quote the specification, select processors would be reached through the interface units, e.g. interface 20, figure 1. That's a clear link between interface 20 and the identification of format and the control of the formats in accordance with DNIS. There's no description whatsoever linking the call data analyzer by itself with controlling the processing formats of the analysis structure. Why does column 4 of the thing I put then tell us that the control is provided through the call data analyzer? But how do I square those two? Because what is provided in column 4, it does not say the control of processing formats of the analysis structure. This is just a generic structural description that says DNIS is available, ANI, which is calling number capability, is available. Both capabilities are available for use with equipment as the interface 20, so that those are associated with interface 20 itself and to provide control through the call data analyzer. Our function here is to control the processing formats of the analysis structure. That's not described here, and furthermore, there's no description that the call data analyzer itself, by itself, is the structure that controls. When I asked you the question of where would we find something in respect to support, there's item 20 you pointed to, column 18, you said there were others? Another one, and this is the one that the examiner correctly recognized as being readily apparent and teaching precisely what was undisputed below until the final board decision, column 6, lines 32 through 46. And that's a fair amount of text. I'll point to the latter part of that and where the specification says the ACD associates the called number rendered available using standard telephone DNAS techniques through the interface 20, and then the switch to obtain connection with a specific processor, e.g., the processor PR1, formatting the health-related program. Accordingly, the processor PR1 cooperates with the interface 20 to cue the interface 20 to operate as a voice generator. And this tells us multiple things that are critical here. There's no mention whatsoever of the call data analyzer 20A. It's the interface 20, and they're describing how this actually works in practice. The interface 20 is the only linked structure there as a unitary structure that provides a connection to particular processors implementing different formats. And I know we're well over time here. Yeah, I'm going to cut you off now, and we'll restore three minutes. Thank you, Your Honor. Mr. McBride? Yes, good afternoon, and may it please the Court. I'd like to follow up on a few points that Judge Clevenger raised. Appellant's counsel argues that the call data analyzer does not perform the claim function by itself, but the words by itself are not part of the claim language, and furthermore, the case law concerning the function doesn't require the corresponding function to actually perform the claim function by itself. The fact that it requires a connection to another component, in this case, the interface and the switch, and if you look at figure one at page 25 of the Joint Appendix, it shows that the interface 20 and the call data analyzer are connected to switch 21. The switch... I'm sorry, page 25 of the Joint Appendix? 25, okay. Yes. And we're looking at figure one here, and you'll see that the interface 20 and the call data analyzer 20A are connected to switch 21, okay? And then switch 21 is connected to the processors, which is the analysis structure. So they're both connected to the switch. Exactly, exactly. And the interface is a two-way switch, the call data analyzer is one-way, right? That's what it appears from the figure one. What's the difference in electronics? If the call data analyzer is a one-way switch, right, so it's just all it is is sending something to the switch? Right, it's connected to the switch. Then there's no capacity to confirm back, right? I believe that's correct. So let's say that, in my hypothetical, you dial a certain number to get American Airlines reservation service, and the last four digits were 000, four zeros, in the telephone book. Okay. But American Airlines actually changed that number to 0001, you know, for its real number, but I don't know that, but a processor knows it. And so when I dial 0000, right, that number would come into the call data analyzer and would go over to the switch, right? Correct. But the number had been changed to 001 inside the processor, wouldn't there need to be a confirmed number back somehow? Under that circumstance, you'd probably have to somehow reprogram the call data analyzer to understand the number. So the electronics would have to come back anyway. I suggest you need a two-way communication from that. I'm looking at the line between the call data analyzer and the switch that shows the electricity going only one way, right? Yep, I see that arrow, yep. But come back, take your adversary's argument on its face. If you look at column six, right, where he points to, he's saying you get the call signal, which is 33333, right? Right. And then what it does is to hook that number up to the correct processor. Now, in my hypothetical, the correct processor is American Airlines Reservation Service, right? Correct. Right. So what it's saying is that the DNIS capacity is both to recognize the number, i.e. that was number dialed, and then to associate it with American Express Reservation instead of United Airlines, right? Right. So isn't the language that's just been quoted to me in column six, isn't that talking about what the function of claim 18 is? I think what column six and what this disclosure is talking about is it says you do have to go through the interface to connect to the processors. You also have to connect from the interface to the switch. So the interface doesn't actually perform the claim function by itself, and the appellant's counsel said that was the main reason why the call data analyzer could not be the corresponding structure because it does not perform the claim function by itself. But the case law is clear. Just because a connection is required to enable the corresponding structure to perform the claim function doesn't make the connection part of the corresponding structure. And you're relying on column four of the language I put in, right? Exactly. And to provide control to the call data analyzer. Yes. It states that the DNIS capability provides control through the call data analyzer. Okay. So let's assume for purposes of argument that those words weren't in the spec and to provide control to the call data analyzer 28 wasn't in the spec. Okay. Then what would your argument be against what we see in the disclosure in column six? The disclosure in column six... The case would be substantially weak, correct? It would be because you do have to look to the specification to identify the corresponding structure that actually performs the claim function and only the corresponding structure that performs the claim function.  What do you do with your adversary's argument that the word to provide control is just generic, it's kind of a general description, provides some kind of control, whereas column six talks about specific control, i.e. identifying the processor? No. So, I mean, we have competing disclosures here. Okay. Would you agree with that? Well, I would argue that under his argument that the corresponding structure must perform the claim function by itself. If that were true, you'd actually need to include not only the interface, but you'd have to have the switch and you can't connect to the processor. I think your adversary has agreed that the 28 structure doesn't have anything to do with voice recognition. That's exactly right. The voice functionality provided by the interfacing cache... That's in a processor someplace else, right? That's a separate component that has nothing to do with the claim function. But if he had his way, structure associated with voice recognition would be included within this particular means-by-function claim, correct? Correct. It's part of the corresponding structure. It could arguably be part of the corresponding structure, but when determining whether a prior art structure is equivalent, it's actually impermissible to consider subcomponents that aren't clearly linked to the claim function. Can you explain to me what the language in column 6, to which your adversary points what that means, what's that all about? This is actually just describing how the call is routed, and if you again look at figure 1 on page 25 of the joint appendix, it's saying that the automated call... Once a call signal comes in, right? The call signal comes in, right? The automatic call distributor, AC1. The DNS technique, which is what the claim limitation is talking about, right? Right, and that's rendered available by the call data analyzer, and it's just describing how this call is routed. It goes from the call distributor to the interface... To the interface. To the interface and the switch, right? So then it goes to the switch, and then it connects to the processors. It's just describing how the call is routed. It's not describing what's contemplated, what's the corresponding structure of the means plus function limitation. So isn't the million dollar question here, what structure in this patent actually identifies that 3333, that telephone number, goes to a particular processor? That is the key. Is that the elephant in the room? Yes, the key is identifying the dialed number, which is done by DNS. Identifying the dialed number to associate with a particular... Because I say frequently, companies will change their menus. You know what I mean? I don't know that, but a processor knows that. Right, but even if you reprogram the menu, as long as the phone number is the same, it's going to go to the correct routine. It goes to the correct routine because there is a processor that recognizes that number when it comes in and knows that it goes here instead of there. Right. Well, the processor is just designed to carry out a particular format. So processor 1 could be American Airlines, processor 2 could be a health survey. The call data analyzer just needs to know where to route 3333 to American Airlines. And if you change that number, you just need to somehow reprogram the call data analyzer to understand that processor 1 is now 3331. Is there any description anywhere in the spec talking about how it is that the patent knows which processor to send a particular telephone number to, once it receives the number, other than at the bottom of column 4 where they say 20A provides control? It does not go into detail about how the DNIS is implemented. All it does in column 6, it refers to DNIS technology as a standard technology. So they don't go into detail about how the call data analyzer is programmed or what type of algorithm it has. It just says it's a standard technique. And when you look at the interface and how it describes what the interface actually does... Why couldn't... I mean, the switch could perform that function. If you look at the electronics here, your call data analyzer and your interface can simply take the numbers being dialed in and ship the number right into the switch. And the switch could be programmed, couldn't it, to know which processor to send the call to. That's possible. The specification doesn't say anything about the switch actually doing that. We'd have to rely on what the specification discloses here. What I'm trying to get at is that the only footprint I could find in the spec at all that tells me how the system knows to which processor to send a call to. Let's assume that it wants to go to American Airlines instead of United. So the only thing I could find was this 28 reference to provide control, which supports your case. I couldn't find anything else anywhere in the patent that is actually describing the precise function of making certain that the telephone call gets to the right piece of information through a processor to the right place. Yeah, and the specification does not provide great detail in how that programming, how the algorithms work. The only disclosure of control, you're correct, is in column four where it says... Our law requires clearly delineating the structure and the spec associated with the function. This is a real bare case, isn't it? It is a fairly bare case, but I think there's enough here to show that the call data... But you didn't have an indefinite projection. There was no indefinite projection, you're right. I think on its face, if you're looking at this for the first time, there could be some issue with indefiniteness, but that's not an issue that we're dealing with. And so why is it that the PTO said if we were to agree with your adversary that either the board got the function wrong or they got the structure associated with the function wrong, you say we have to remand the case? Because their argument for a reversal, they cite to Henry Donaldson, and in that case, the board made a factual finding that the prior reference to SWIFT disclosed the hopper having sloped sides that were rigid, and the side circuit, when it construed the means plus function claim, it found... So their problem here is that the board didn't give you an alternative ground. Well, no, here the board did not make any factual finding... They didn't back up behind the examiner and say, regardless of what it is you want to pick between the structures that are disclosed, this is obvious. The prior, I mean, I thought the examiner's ruling was that even on Katz's take on the case, the examiner said, no, no, you're still, like the prior said... That's correct, yes. But, I mean, what I'm saying is the board didn't... The board could have, if it had wanted to, given an alternative holding. They didn't give an express alternative holding. What they did say, if you look at page 6 of the joint appendix, the first page of the board's analysis, the second paragraph and the second full sentence, they talk about what the examiner did. The examiner interpreted the language means-to-control process conformance of the analysis structure as a means-plus-function limitation and they identified the corresponding structure as either an interface processor, a Centrum 9000, or an interface unit. The examiner further found that the DID trunk interface of Moosemiller performs the function specified in the claim and it is the same structure or an equivalent structure to the means-plus-function limitation. And the board said it agreed with the examiner. And then it went on to say, we actually find that the means-plus-function limitation should be construed differently. But they did agree with... But you're not arguing, you're not trying to say that's an alternative holding. It's kind of confusing because they didn't expressly say that under both claims instructions it's an alternative ground of rejection. They didn't have the extra sentence that said, therefore, we have an alternative holding. They didn't say anything about... What I'm trying to get at is that because of your... what I call concession in your brief, we've got to send this case back, I would feel obligated to send it back if we were to agree with Katz on the merits of the initial appeal. It just seemed to me like a waste of time. Yeah, I don't think you necessarily have to send it back. I think there's enough support in the record here in what we just discussed in the board decision, what the examiner did, that if you feel confident that the board's rejection... under Katz's proposed instruction, which the examiner actually used, if you feel confident that the board would make the same rejection and affirm it, you can actually use your discretion to affirm the board's decision. If you're not confident, you also have discretion to remand. I see I'm out of time here. Thank you. Your Honors, several points. First, critically, critically important to correctly identify and construe and understand the recited function. It's a means to control processing formats. This was emphasized by the examiner, JA2277, underlined. What is controlled are the processing formats. It's not controlling DNIS. It's controlling the processing formats as a matter of grammar, logic, and the description and the specification. Secondly, the call data... What does it mean to be controlling the process? Processing formats. So the processor implements... Processors implement different formats, which are essentially interactive applications. Interface 20 is the structure that controls those in the passages we looked at. Zero description whatsoever, anywhere in the record, that the call data analyzer itself is... I was going to ask you this. What's the call data analyzer do? All it does is, exactly as its name indicates, there's no further description, analyzes call data. An incoming call data stream comes in. That needs to be recognized and interpreted. It may be digital, analog. Its information comes in, needs to be analyzed, and that's all it does. It analyzes it to provide that the DNIS... To analyze it for what purpose? To pull out... To analyze it to answer what question? To pull out the DNS. To tell the interface processor, the interface 20, what's the DNS. The interface device, that's how it learns what the DNS is, is from the call data analyzer. It analyzes call data. The interface is the device that uses and controls using that information as expressly described throughout the specification. There's zero description. There's some reference by counsel that call data analyzer could be programmed or it makes routing decisions. And then why does column 4 say that 28 provides control? Because it doesn't provide any control. In your view, it doesn't provide any control at all. What provides control is the interface 20, including the call data analyzer. The text of this patent says... You're telling me the call data analyzer doesn't perform any control. Control is provided through the call data analyzer is the text of the patent. It's provided by something else, namely the interface 20 as a whole, provided through the call data analyzer using call data analyzer. It's certainly part of the function or part of the structure, but it's not the complete... I still don't understand why we have 28 and what's it doing. 28 is simply recognizing that the number dial was the number dial or it was analog number as opposed to digital number. The system receives call data. It's an incoming data stream. It needs to be interpreted. The call data analyzer... Electronic hand posters. Right. It takes various forms, digital or analog. It needs to recognize what's in that data and provide that information, analyze it. That's all it does. There's no description that it controls. When it provides the data, when it analyzes, what's the analytic report say? That's not described and that's not the claim function. The claim function is what's performed by the interface 20. The connection which has the processing capability that the call data analyzer does not have. Very quickly, if I could just have a few more seconds on the point of if the court were to agree with our claim construction, there is no basis to remand. Nothing in the record below, this is a multi-year re-examination, never once did the examiner in any office action or the answer or the board ever rely on the Yoshizawa reference as having any structural input into this means plus function claim element. Zero. There's nothing in the record whatsoever conceded by the board and in the briefing, although it may be walked back from that, in the argument that if the claim construction is correct, Moose Miller does not disclose this claim element under the patent owner's proposed construction. Thank you, Your Honors. Thank you. I would thank both counselors for their patience in letting that conclude Mr. Stevens. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 a.m. Thank you very much.